**Benny LURK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16407.**

United States Court of Appeals District of Columbia Circuit.

Argued June 20, 1961.

Decided June 22, 1961.

Concurring Opinion July 17, 1961.

Certiorari Granted Oct. 9, 1961. See 82 S.Ct. 110.

Mr. Eugene Gressman, Washington, D. C. (appointed by this court), for appellant.

Mr. Charles T. Duncan, Asst. U. S. Atty., with whom Messrs. David C. Ache-

son, U. S. Atty., and Donald S. Smith, Asst. U. S. Atty., were on the brief, for appellee.

Messrs. Archibald Cox, Sol. Gen., Herbert J. Miller, Jr., Asst. Atty. Gen., Oscar H. Davis, Asst. to the Sol. Gen., Miss Beatrice Rosenberg, Philip R. Monahan, Mrs. Patricia R. Harris, and Mr. Richard W. Schmude, Attys., Dept. of Justice, were on the brief for the United States, filed in the Supreme Court in Lurk v. United States, No. 669, Oct. Term, 1960, which was also considered by the court in this case.

Mr. Roger Robb, Washington, D. C., for Chief Judge and Associate Judges of the United States Court of Customs and Patent Appeals, as amici curiae.

Mr. Francis Shea, Washington, D. C., with whom Mr. Richard T. Conway, Washington, D. C., was on the brief filed in the Supreme Court in Lurk v. United States, No. 669, Oct. Term, 1960, for Marvin Jones, Chief Judge of the United States Court of Claims, and Samuel E. Whitaker and others, Judges of the United States Court of Claims, as amici curiae, which was also considered by the court in this case.

Mr. Bennett Boskey, Washington, D. C., was on the brief for Mark Coppedge, Jr., as amicus curiae, filed in the Supreme Court in Lurk v. United States, No. 669, Oct. Term, 1960, which was also considered by the court in this case.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON, PRETTYMAN, BAZELON, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting in banc.

PER CURIAM.

■ This case is here on appeal from the United States District Court for the District of Columbia, following remand from the Supreme Court of the United States. Lurk v. United States, 1961, 366 U.S. 712, 81 S.Ct. 1229, 6 L.Ed.2d 845. We heard argument *in banc* on the merits of the two contentions advanced by appellant's able court-appointed counsel, namely, (1) that certain evidence was erroneously admitted at appellant's trial for robbery in the District Court, a trial which resulted in his conviction; and (2) that the assignment of a retired judge of the Court of Customs and Patent Appeals to preside at the trial was in violation of appellant's constitutional rights.[1]

The first of these contentions is not tenable. The evidence complained of, which might perhaps have indicated to the jury that appellant had once been a prison inmate, was largely brought out by appellant's own trial counsel.[2] The first reference to the matter came during examination of the complaining witness by Government counsel.[3] The latter, claiming surprise, asked that the answer be stricken. This was done. Appellant's counsel, after amplifying the subject through his own examination, received a limiting instruction and expressed himself as satisfied. We find no error.

■■ As to the remaining question, several constitutional issues were raised, centering on appellant's contention that the trial judge, having been appointed to the Court of Customs and Patent Appeals, said to be a court constituted under Article I of the Constitution, could not constitutionally sit on an "Article III" court, i. e., the United States District Court for the District of Columbia. Appellant relies on such cases as Ex parte Bakelite Corporation, 1929, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789, and

---

1. The assignment was made by the Chief Justice of the United States pursuant to 28 U.S.C. § 294(d). Retired "judges of the United States," including retired judges of the Court of Customs and Patent Appeals, are available for assignment. Appellant acknowledges that the statute purports to authorize assignments of the sort challenged here.

2. Not of counsel on this appeal.

3. The witness was asked where he had previously seen appellant, and replied "In Occoquan." A District of Columbia workhouse or jail is located in Occoquan, Virginia.

Williams v. United States, 1933, 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372. The Government and the *amici* (except Coppedge) argue that these cases are not controlling, and that the Court of Customs and Patent Appeals (as well as the Court of Claims) is a court created by Congress under Article III of the Constitution.

Deeming it our duty to dispose of the case with as complete an avoidance as may be of constitutional questions, see Harmon v. Brucker, 1958, 355 U.S. 579 at 581, 78 S.Ct. 433, 2 L.Ed.2d 503,[4] we affirm the conviction and determine that the trial judge was qualified to sit, on the following ground: that the assignment must in any event be sustained under the plenary power of Congress over the District of Columbia and its courts, pursuant to Article I, Sec. 8, Cl. 17, of the Constitution.

The judge in this case was appointed to the Court of Customs and Patent Appeals in 1937. At that time there was in force a statute specifically providing:

"The judges of the United States Court of Customs and Patent Appeals, or any of them, whenever the business of that court will permit, may, if in the judgment of the Chief Justice of the United States the public interest requires, be designated and assigned by him for service from time to time, and until he shall otherwise direct, in the Supreme Court of the District of Columbia or the United States Court of Appeals for the District of Columbia, when requested by the Chief Justice of either of said courts." 28 U.S.C. § 22 (1934 ed.).

Thus, the post to which the trial judge was appointed by the President and con-firmed by the Senate was one which clearly included the possibility and prospect of judicial service on the Supreme Court of the District of Columbia, now the United States District Court for the District of Columbia. The Congress spoke of "service" on that court—by which it must have meant the exercise of every type of jurisdiction possessed by the court.[5] The statute is now not limited to the District of Columbia but includes assignments to judicial service throughout the country.[6] Be that as it may, we think that at all relevant times Congress has specifically made available the services of the judges of the Court of Customs and Patent Appeals to meet the needs of the United States District Court for the District of Columbia. We think there can be no doubt of the power of Congress to do so, in view of the broad sweep of its legislative authority over the Federal District. See Kendall v. United States, 1938, 12 Pet. 524, 619, 37 U.S. 524, 619, 9 L. Ed. 1181; O'Donoghue v. United States, 1933, 289 U.S. 516, 545, 53 S.Ct. 740, 77 L.Ed. 1356; Keller v. Potomac Electric Power Co., 1923, 261 U.S. 428, 443, 43 S. Ct. 445, 67 L.Ed. 731.

We need not examine the other contentions of the parties.

Affirmed.

FAHY, Circuit Judge, took no part in the hearing or decision of this case.

Statement of Circuit Judge Prettyman, Concurring in Opinion Filed June 22, 1961

PRETTYMAN, Circuit Judge (concurring).

A bit of history is pertinent. In 1921, when this court had three judges and our District Court had six judges, a bill [1]

---

4. We are mindful, too, of our duty to expedite the hearing and disposition of appeals in criminal cases.

5. The quoted statute goes on to provide: "During the period of service of any judge designated and assigned under this chapter, he shall have all the powers, and rights, and perform all the duties, of a judge of the district, or a justice of the court, to which he has been assigned (excepting the power of appointment to a statutory position or of permanent designation of newspaper or depository of funds)."

6. See 28 U.S.C. §§ 291–296 (1958 ed.).

1. H.R. 9103, 67th Cong., 1st Sess.

to provide additional judges for certain judicial districts (not including this one) was introduced in the House of Representatives. During floor debate on the bill Representative Volstead proposed an amendment which would have allowed the Chief Justice of the United States to designate judges of the Court of Customs Appeals (now the Court of Customs and Patent Appeals) to serve on any United States District Court or on the Supreme Court of the District of Columbia and the Court of Appeals for the District of Columbia.[2] The legislative record indicates that the Senate rewrote the House bill, eliminating the amendment here pertinent.[3] In conference the amendment was reinserted in a limited form, *i.e.*, limited to designations to the courts of the District of Columbia.[4] No further discussion appears to have occurred on the floor of either House. The section as thus written was enacted.[5] The section was reenacted in substantially the same form when Title 28 was "revised, codified, and enacted into law" in 1948.[6] In the present Title 28 the limited section has been superseded by a broad power to designate judges of the Court of Customs and Patent Appeals to any federal Court of Appeals or District Court.[7]

Subsequent to the Act of 1922 judges of the Court of Customs Appeals were regularly designated to sit on this court. Our minutes show that on October 12, 1922, Judge James F. Smith first sat here. Judge George E. Martin (who was later to be appointed Chief Justice of this court) first sat here on October 23, 1922, and on November 2nd of that year Judge Orion M. Barber first sat. Other judges of the Court of Customs Appeals were from time to time designated, and by 1924 that court's full complement of judges had been designated to serve on this court. These judges were listed as Associate Justices of this court in Volumes 52 through 58 of our official Reports, with the notation that they had been designated here by the Chief Justice pursuant to the Act of September 14, 1922. Similar listings of those judges as judges of this court appear in the Federal Reporter from 284 F. to 32 F. 2d. Leafing through the reports of our opinions one readily finds many cases in which judges of the Court of Customs Appeals sat on this court. By an Act of June 19, 1930,[8] the membership of this court was increased to five judges. In Volume 59 of our Reports, which is for April, 1929, to December, 1930, and thenceforward, the listings of the Customs Court judges as judges of this court were discontinued.

Similar designations were made to our District Court, then the Supreme Court of the District of Columbia. Judge Smith was assigned by the Chief Justice on March 14, 1925, to serve there "during the absence and inability to serve" of Justice Siddons; and on January 9, 1928, Judge William J. Graham and Judge Charles S. Hatfield were so assigned. These judges sat in many trials for many years.

Although at no point in the debate on the bill above discussed was it indicated that any member of the House was aware of the distinction between constitutional and legislative courts, the question whether judges appointed to the Customs Court were qualified to sit on District Courts was thoroughly discussed. The suggestion was that judges appointed to the Customs Court were chosen to perform certain narrow tasks and might not be qualified to exercise the broad powers of a federal District or Circuit Judge. The matter was debated, with eloquent espousals of the abilities of these judges.

2. 62 Cong.Rec. 207 (1921).

3. See S.Rep. No. 497, 67th Cong., 2d Sess. (1922).

4. See H.R. Rep. No. 1152, 67th Cong., 2d Sess. (1922).

5. Act of Sept. 14, 1922, 42 Stat. 837, 839.

6. 62 Stat. 869.

7. S.Rep. No. 2309, 85th Cong., 2d Sess. 4 (1958). Act of Aug. 25, 1958, 72 Stat. 848, 28 U.S.C.A. §§ 211, 291 et seq.

8. 46 Stat. 785.

Portions of the debate are printed in an Appendix hereto, but it is sufficient here to note that, after both sides of this argument were fully presented, the House voted to accept the amendment.

So, as a matter of history, Congress specifically provided that judges of the Court of Customs Appeals might sit on the courts of the District of Columbia, over which Congress had complete legislative power as well as its power to establish inferior courts in the Judicial Branch of the Government. Such judges did in fact many years ago and in many cases sit as judges, on both the trial court of general jurisdiction (now the District Court) and the appellate court (this court) in this jurisdiction. So the designation of Judge Jackson to sit on our District Court, and his sitting there, is nothing new. The practice has been occurring off and on for almost forty years. Pursuant to historical precedent he might have been designated to sit on this court; as, indeed, he was. See, for example, Hamilton v. United States, 102 U.S.App.D.C. 298, 252 F.2d 862, certiorari denied, 357 U.S. 939, 78 S.Ct. 1389, 2 L.Ed.2d 1553 (1958); Payne v. District of Columbia, 102 U.S. App.D.C. 345, 253 F.2d 867 (1958); Rothe v. Ford Motor Company, 102 U.S. App.D.C. 331, 253 F.2d 353 (1958).

### Appendix

The following are excerpts from debate in the House of Representatives on December 10, 1921, 62 Cong. Rec. 190–191, 207–209:

"Mr. VOLSTEAD. * * *

" * * * We purpose to offer as an amendment to this bill a provision, which has been approved by the Judiciary Committee, authorizing the judges of the Court of Customs Appeals to function in the district courts as judges of those courts. Those judges have had but very little. to do for a number of years. · There are five of them living here in this city drawing a salary, I believe, of $8,000 per year. They are capable

men, just as capable as any of the ordinary district-court judges. The reputation they bear is very good. They can easily do work in West Virginia to help clean up the court dockets there and in some of the adjoining States. It is our purpose to make those judges function the same as the other judges that we have on the pay roll. With those judges located here, there would be no difficulty whatever in supplying an additional judge, if necessary, down in West Virginia. It is true that as soon as the new tariff bill passes, for some months, perhaps for a year or two, they may have considerable work in the Court of Customs Appeals, but as soon as the construction of the new tariff law is fixed they will have considerable leisure. At least that has been our experience. During the last few years those judges have been without much of any work, and during the last Congress one of these came to me and asked me to introduce a bill to give them an opportunity to be assigned to district and circuit work. We passed that bill in the House, but for some reason or other it failed in the Senate.

     *     *     *     *     *

"Mr. HUSTED. Does the gentleman feel sure that the judges who sit on the bench of customs appeal are as well qualified to act as the district judges?

"Mr. VOLSTEAD. There is no question in my mind about that.

"Mr. HUSTED. They handle but two classes of cases, reappraisement, and classification cases under the tariff law.

"Mr. VOLSTEAD. I know, but they are high-class lawyers; they were men who could have been put on the district bench or circuit bench when appointed.

"Mr. HUSTED. But they have not been practicing for years. They.

have been serving on this customs court of appeals.

\* \* \* \* \*

"Mr. VOLSTEAD. They are as good lawyers as the average district judge trying such questions. There is no doubt of their qualification. The Chief Justice, and I do not think it is improper for me to say to you that he called my attention to the fact that these men were high-grade men and ought to be put to work, and that they were capable of serving in the district courts or in the supreme court or court of appeals in this district. And we hope this House will accept that amendment and allow those men to do this work, and if they are given the work there is absolutely no excuse, even with the congestion that exists to-day, for providing an additional judge for West Virginia.

\* \* \* \* \*

"Mr. HUSTED. Mr. Chairman, I think this amendment should not prevail. The gentlemen who are now on the Customs Court of Appeals may be very able lawyers. Personally, I do not know as to that, but I do know this, that they need not be necessarily very great lawyers to serve well in that court. They have but two classes of cases to pass upon. One class is that of cases of reappraisement of the valuation of merchandise imported into the United States. The other is the classification of that merchandise. They deal almost exclusively with questions of fact and very little with questions of law. They may have been able men and able lawyers when they went on the bench, but they have been out of touch with the practice of the law for many years, and I am very sure that in my own State and in my own district we would not want one of these men assigned to come there and try these vastly important cases—admiralty cases and patent law cases—when they have not been in touch with the practice of the law for years.

"Why, by this amendment we are practically creating a number of district judges. We should not create them in that way. These men were not appointed because they were well qualified to be district judges. They were appointed because they were well qualified to pass upon questions arising under the tariff law. I do not think we would aid the administration of justice by enacting an amendment of this kind. I do not think we would facilitate the transaction of our important business. I think it would be a bad precedent, an unwise thing to do. I think it would lower the standard of judicial service and accomplishment, and I feel that the amendment should be defeated.

\* \* \* \* \*

"Mr. RAKER. Mr. Chairman and gentlemen of the committee, I did not rise to discuss the amendment I offered to the Volstead amendment and shall not discuss it. It is in the same language as the other sections, and is necessary. It is wholly immaterial to me what the House does with it. But what I do rise to say is this: The Chief Justice of the United States Court of Customs Appeals, Judge DeVries, was a former and able Member of this House, where he had a high standing. He has a high standing as a member of the bar of California. None better. Another member, Judge Smith, was Governor General of the Philippines, and for years stood at the head of the bar of San Francisco as a lawyer. The other two men on the bench of that court, one of them from Vermont, Judge Barber, and the other from Ohio, Judge Martin, and each of them stood at the head of the profession in the State from which he came. The statement that only two questions are involved before this court is a mistaken statement. Read the reports of the deci-

sions of that court, nine volumes now published and one partly published, and you will find that all the questions of evidence in civil and equity cases are involved in those decisions. All these men are the peers of any of the judges of the district courts of the United States as men, in ability, and as civil and equity lawyers, all men of wide experience, able lawyers, and able and worthy judges, and they would be a credit to the district bench wherever they might be sent to preside, and they can give the very best service. I am for this amendment and hope it will be adopted.

"Mr. CURRY. Mr. Chairman, I have the honor of the personal acquaintance and friendship of three of the members of the Court of Customs Appeals. There are no abler lawyers in the United States of America than those three men. They would grace the Supreme Bench of the United States. I had the honor to succeed one of these gentlemen as a Member of this House. There is no question as to their ability, there is no question that they could perform the duties of United States district judges as well as anyone who might be selected. The only question to be considered by the committee is as to whether the duties of the Court of Customs Appeals will permit of their devoting their time to other work after the tariff bill shall have been enacted. I can not sit quiet and hear their ability attacked without stating that from my personal knowledge there are no better lawyers in the United States than these three men, and none better qualified to perform the duties of district judges should this amendment be adopted and any of them should be assigned to hear and decide any case that may come before such court.

"Mr. WINGO. [Opposed the amendment.] "

The amendment was agreed to.