**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George JOHNSON, Defendant-Appellant.**

**No. 260, Docket 24895.**

United States Court of Appeals Second Circuit.

Argued March 12, 1958.

Decided April 15, 1958.

William H. Timbers, New York City (Maurice N. Nessen, New York City, on the brief), for defendant-appellant.

Cornelius W. Wickersham, Jr., U. S. Atty., E.D.N.Y., Brooklyn, N. Y. (Warren Max Deutsch, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and BRENNAN, District Judge.

CLARK, Chief Judge.

This is an appeal on the merits in our now famous Johnson case, Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593, reversing United States v. Johnson, 2 Cir., 238 F.2d 565, from a conviction for conspiracy, mail theft, and uttering and forging a United States Treasury check. In this case in reversing us the Supreme Court directed that provision be made for assistance to the defendant in attacking the trial judge's certificate that the appeal was not taken in good faith and the denial of leave to appeal *in forma pauperis.* 28 U.S.C. § 1915(a). Accordingly we have permitted the appeal with counsel duly assigned and with a transcript of the evidence furnished at government expense. The claim of error now made is that the prosecution introduced and highlighted evidence that the conspirators bought

narcotics with the proceeds of the check and that the narcotics were than used by Johnson along with the others. The prosecution contends that this evidence was admissible to show motive. Our examination of the full record shows that the accused had a fair trial and that his appeal was doomed to inevitable failure, even though it probably should not be deemed in bad faith.

Johnson and four others were indicted for the crimes. The other four pleaded guilty and testified for the government at Johnson's trial. From the evidence it appears that Johnson was the instigator of the conspiracy. There was testimony that he approached coconspirator Patterson and told him about the location of two checks which they thereafter obtained when Patterson, in Johnson's presence, broke open the mailbox containing them. These checks were United States Treasury checks made out to the order of a woman payee, and the mailbox was located at her residence in a housing project in Brooklyn. Johnson and Patterson then joined the other coconspirators and helped prepare forged identification cards which were put in Johnson's wallet, together with the checks bearing endorsements forged by Gloria Mapp, one of the women coconspirators. Thereafter four of the coconspirators, including Johnson, went to a store where Mapp sought to cash the checks. The storekeeper probably was suspicious, for he gave her only a portion of the face amount of one check and promised to pay the remainder to her later. Mapp gave the proceeds to Johnson and Johnson gave them to Cleavest, another coconspirator, who purchased narcotics which were shared by all the participants. Afterwards Mapp was arrested when she returned to the store to pick up the balance of the check, and she then implicated the others.

■ ■ Johnson's chief contention, presented in his counsel's opening statement, was that he was entirely innocent and that the government's witnesses would lie to implicate him in the hope of gaining leniency. This had a certain ring of persuasiveness, for admittedly Johnson had not personally broken open the mailbox or forged or cashed the checks. But he did personally participate in one of the acts of the conspiracy —he shared its fruits; and the prosecution properly introduced evidence of this fact to show his motive in joining in the conspiracy and to tie him in with the commission of the crimes contrary to his story of innocence. United States v. Puff, 2 Cir., 211 F.2d 171, certiorari denied Puff v. United States, 347 U.S. 963, 74 S.Ct. 713, 98 L.Ed. 1106. Moreover, this proof helped to paint the entire picture of the conspiracy and thus was relevant and admissible unless otherwise objectionable. United States v. Apuzzo, 2 Cir., 245 F.2d 416, 420–421, certiorari denied Apuzzo v. United States, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43.

■ ■ Sharing in the fruits of the conspiracy here involved the commission of a separate crime—illegal use of narcotics; and Johnson now argues for the first time that this evidence was so highly prejudicial in relation to its relevancy that it was reversible error to admit it. United States v. Krulewitch, 2 Cir., 145 F.2d 76, 156 A.L.R. 337. Of course evidence showing motive is admissible, especially where it bears on a contested issue—here participation in the conspiracy —even if it shows the commission of another crime. United States v. Puff, supra, 2 Cir., 211 F.2d 171, 175. Only if its relevancy is minimal and the chance of resultant prejudice great should the evidence be excluded. United States v. Apuzzo, supra, 2 Cir., 245 F.2d 416, 421; United States v. Krulewitch, supra, 2 Cir., 145 F.2d 76, 80, 156 A.L.R. 337. Here the record shows that the trial court sustained all of Johnson's objections to the admission of evidence bearing on narcotics and that the trial judge, on his own motion, instructed the jury to disregard all references to narcotics. This was actually overfavorable to the accused. Later evidence touching the subject came in through the defendant's cross-examination of prosecution witnesses. Moreover, the defense did not

even request limiting instructions in the charge. Hence the issue was never raised below. But in any event the evidence was highly probative, and the chance of prejudice was slim in view of the court's prompt instructions. United States v. Volkell, 2 Cir., 251 F.2d 333. Thus the evidence of narcotics properly was admitted and presented to the jury. And the defendant's rights were sedulously, even overzealously, protected during the trial.

We are particularly indebted to court-assigned counsel for loyal assistance to the court and brilliant presentation of the case, both in the former proceedings and here. Defendant has had the benefit of able advocacy of the highest order. The meticulous care which his case has had should carry assurance that his conviction is just.

Conviction affirmed.