COPPEDGE *v.* UNITED STATES.

No. 157.   Argued December 12, 1961.—Decided April 30, 1962.

440

*Bennett Boskey* argued the cause and filed a brief for petitioner.

*Carl W. Belcher* argued the cause for the United States. On the brief were *Solicitor General Cox, Assistant Attorney General Miller, Beatrice Rosenberg* and *Sidney M. Glazer.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Tried and convicted in a Federal District Court for an offense against the United States, petitioner applied for leave to appeal his conviction to the Court of Appeals *in forma pauperis.* His application was denied. The case presents this question: What standard is to be applied by the lower federal courts in passing upon such applications? The articulation of a usable standard has been the source of considerable recent litigation.[1] And, while

---

[1] During the past five Terms of the Court, we have found it necessary to vacate and remand for reconsideration 14 cases in which a Court of Appeals has applied an erroneous standard in passing on an indigent's application for leave to appeal. *Johnson* v. *United States,*

we recognize that no single word or group of words can provide a precise formula that will dispose of every case, we think it appropriate to indicate in somewhat greater detail than in the past, the approach a Court of Appeals must take toward an indigent's application for leave to take a direct appeal from his criminal conviction *in forma pauperis*.

Statutory provision for litigation *in forma pauperis* in the federal courts is made by 28 U. S. C. § 1915, authorizing "[a]ny court of the United States" to allow indigent persons to prosecute, defend or appeal suits without prepayment of costs. Before discussing our understanding of the proper manner in which a Court of Appeals is to exercise its authority to allow a criminal appeal *in forma pauperis,* we believe it would be helpful to indicate briefly the law applicable to criminal appeals generally. The provisions of § 1915 can be understood and applied in such cases only when read together with the other provisions of the Judicial Code and the Federal Rules governing criminal appeals.

Present federal law has made an appeal from a District Court's judgment of conviction in a criminal case what is, in effect, a matter of right.[2] That is, a defendant has a right to have his conviction reviewed by a Court of Appeals, and need not petition that court for an exercise

---

352 U. S. 565; *Farley* v. *United States,* 354 U. S. 521; *Delbridge* v. *United States,* 354 U. S. 906; *Edwards* v. *United States,* 355 U. S. 36; *Ellis* v. *United States,* 356 U. S. 674; *Hill* v. *United States,* 356 U. S. 704; *Cash* v. *United States,* 357 U. S. 219; *Hansford* v. *United States,* 357 U. S. 578; *Kitchens* v. *United States,* 358 U. S. 42; *Smith* v. *United States,* 358 U. S. 281; *Smith* v. *United States,* 361 U. S. 13; *Smith* v. *United States,* 361 U. S. 38; *McAbee* v. *United States,* 361 U. S. 537; *Lurk* v. *United States,* 366 U. S. 712. See also *Page* v. *United States,* 359 U. S. 116; *Willis* v. *United States,* 362 U. S. 216. Cf. *Simcox* v. *Madigan,* 366 U. S. 765; *Ragan* v. *Cox,* 369 U. S. 437.

[2] 28 U. S. C. §§ 1291, 1294; Fed. Rules Crim. Proc. 37 (a). Cf. *Carroll* v. *United States,* 354 U. S. 394, 400–401.

of its discretion to allow him to bring the case before the court. The only requirements a defendant must meet for perfecting his appeal are those expressed as time limitations within which various procedural steps must be completed. First, a timely notice of appeal must be filed in the District Court to confer jurisdiction upon the Court of Appeals over the case.[3] Subsequently, designations of the transcript, a record on appeal and briefs must be filed in the appropriate forum.[4]

The indigent defendant will generally experience no material difficulty in filing a timely notice of appeal.[5]

---

[3] Fed. Rules Crim. Proc. 37 (a); *United States* v. *Robinson,* 361 U. S. 220.

[4] Fed. Rules Crim. Proc. 39 (c) (record on appeal to be docketed in Court of Appeals within 40 days of filing of notice of appeal); Rules of the Court of Appeals for the District of Columbia Circuit 33 (b) (application for copies of stenographic transcript of trial proceedings to be made within 3 days of filing of notice of appeal, or within 10 days if appellant is incarcerated), 33 (c) (appellant's designation of record on appeal to be filed within 20 days of filing notice of appeal), 18 (a) (appellant's briefs due within 20 days of filing record on appeal).

[5] Although the timely filing of a notice of appeal is a jurisdictional prerequisite for perfecting an appeal, *United States* v. *Robinson,* 361 U. S. 220, a liberal view of papers filed by indigent and incarcerated defendants, as equivalents of notices of appeal, has been used to preserve the jurisdiction of the Courts of Appeals. See, *e. g.,* *Lemke* v. *United States,* 346 U. S. 325 (notice of appeal filed prior to judgment); *O'Neal* v. *United States,* 272 F. 2d 412 (C. A. 5th Cir.) (appeal bond filed in District Court); *Tillman* v. *United States,* 268 F. 2d 422 (C. A. 5th Cir.) (application for leave to appeal *in forma pauperis* filed in District Court); *Belton* v. *United States,* 104 U. S. App. D. C. 81, 259 F. 2d 811 (letter written to District Court); *Williams* v. *United States,* 88 U. S. App. D. C. 212, 188 F. 2d 41 (notice of appeal delivered to prison officials for forwarding to District Court). See also *Jordan* v. *United States District Court,* 98 U. S. App. D. C. 160, 233 F. 2d 362, vacated on other grounds *sub nom. Jordan* v. *United States,* 352 U. S. 904 (mandamus petition filed in Court of Appeals held equivalent of notice of appeal from

But thereafter he is immediately faced with court fees for docketing his appeal in the Court of Appeals and with the cost of preparing the record, including a stenographic transcript of at least portions of the trial proceedings.[6]   If he is unable to meet either or both of these expenses, he can perfect his appeal only by applying for leave to appeal *in forma pauperis*.   The application, to be made to the District Court in which the defendant was convicted,[7]

---

judgment in proceeding pursuant to 28 U. S. C. § 2255) ; *West* v. *United States*, 94 U. S. App. D. C. 46, 222 F. 2d 774 (petition for leave to appeal *in forma pauperis* filed in Court of Appeals held equivalent in § 2255 case).

Further, Fed. Rules Crim. Proc. 37 (a)(2) expressly provides:

"When a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file forthwith a notice of appeal on behalf of the defendant."

The salutary purpose of this provision may, however, not be achieved when the defendant appears at sentencing with counsel.   If neither counsel, whether retained or court appointed, nor the district judge imposing sentence, notifies the defendant of the requirement for filing a prompt notice of appeal, the right of appeal may irrevocably be lost.   Cf. *Hodges* v. *United States*, 108 U. S. App. D. C. 375, 282 F. 2d 858, cert. granted, 365 U. S. 810, cert. dismissed as improvidently granted, 368 U. S. 139, 140–141 (dissent) ; *Lewis and Simms* v. *United States*, 107 U. S. App. D. C. 353, 278 F. 2d 33, 111 U. S. App. D. C. 13, 294 F. 2d 209.

[6] The fee for docketing an appeal in the Court of Appeals is $25. Stenographic transcripts in the federal courts cost $0.65 per page for the first copy, and $0.30 per page for additional copies.   Transcripts in excess of 100 pages are not uncommon.   The cost of printing briefs, records, and appendices, as illustrated by the present charge for printing records in this Court, may be $3.80 per page or more.   The printing requirements are generally waived in appeals proceeding *in forma pauperis*.   Cf. Fed. Rules Civ. Proc. 75 (m).   But if, in such cases, printing is required by the Court of Appeals, the expense is borne by the United States.   28 U. S. C. § 1915 (b).

[7] The statute appears to contemplate an initial application to the District Court by providing "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in

must conform to the requirements of 28 U. S. C. § 1915 (a) and include, in affidavit form, the defendant's representations of poverty, a statement of the case, and his belief that he is entitled to redress. The sole statutory language by which the District Court is guided in passing upon the application provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U. S. C. § 1915 (a).

What meaning should be placed on the "good faith" of which the statute speaks? In the context of a criminal appeal, we do not believe it can be read to require a District Court to determine whether the would-be appellant seeks further review of his case in *subjective* good faith, *i. e.*, good faith from his subjective point of view.[8] Such

---

good faith." 28 U. S. C. § 1915 (a). And this is the manner in which the statute has been interpreted. See, *e. g., West* v. *United States,* 94 U. S. App. D. C. 46, 222 F. 2d 774; *Waterman* v. *McMillan,* 77 U. S. App. D. C. 310, 135 F. 2d 807; *Murrey* v. *United States,* 134 F. 2d 956 (C. A. 8th Cir.) ; *Bayless* v. *Johnston,* 127 F. 2d 531 (C. A. 9th Cir.). And see Rules of the Court of Appeals for the District of Columbia Circuit 41 (a). But cf. *Jordan* v. *United States District Court,* 98 U. S. App. D. C. 160, 163, 233 F. 2d 362, 365 note 3, vacated on other grounds *sub nom. Jordan* v. *United States,* 352 U. S. 904.

[8] In discussing the "good faith" requirement of what is now 28 U. S. C. § 1915 (a), Senator Bacon of the Senate Judiciary Committee said:

"When a judge has heard a case and it is about to be carried to an appellate court, he . . . is in a position to judge whether it is a case proceeding captiously, or viciously, or with prejudice, or from any other improper motive, or whether the litigant is proceeding in good faith." 45 Cong. Rec. 1533 (1910).

However, he was discussing primarily civil suits. And see *Jaffe* v. *United States,* 246 F. 2d 760 (C. A. 2d Cir.) (civil case). But in criminal cases cf. *Cash* v. *United States,* 104 U. S. App. D. C. 265, 269, 261 F. 2d 731, 735, vacated, 357 U. S. 219; *Parsell* v. *United States,* 218 F. 2d 232 (C. A. 5th Cir.). See also *United States* v. *Visconti,* 261 F. 2d 215 (C. A. 2d Cir.) (proceeding under 28 U. S. C. § 2255).

a construction would deprive the legislation of sensible meaning, there probably being no convicted defendant who would not sincerely wish a Court of Appeals to review his conviction. Further, a subjective standard might suggest that only persons who, in good conscience, could insist on their innocence, are to be entitled to a review of their convictions without payment of costs. We believe this interpretation of the statute is not required by reason nor is it consistent with the sound administration of criminal justice in the federal courts. We hold, instead, that "good faith" in this context must be judged by an *objective* standard. We consider a defendant's good faith in this type of case demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if *in forma pauperis* litigation is attempted for reasons that may genuinely be characterized as the litigant's "bad faith," express authority exists in 28 U. S. C. § 1915 (d) for dismissal of the cause as frivolous.[9]

If the District Court finds the application is not in good faith, and therefore denies leave to appeal *in forma pauperis,* the defendant may seek identical relief from the Court of Appeals.[10] In considering such an appli-

---

[9] And see Fed. Rules Crim. Proc. 39 (a); Fed. Rules Civ. Proc. 12 (f).

[10] 28 U. S. C. § 1915 expressly authorizes "[a]ny court of the United States" to permit a litigant to proceed *in forma pauperis.* Thus it is not necessary to consider the application to the Court of Appeals a separate "appeal" from the order of the District Court denying relief, to which the time requirements of the Federal Rules of Civil Procedure would be applicable as they are to appeals in other ancillary post-conviction proceedings. Cf. *Roberts* v. *United States District Court,* 339 U. S. 844, 845. The court below has, by its own Rule 41 (b), required all persons seeking leave to appeal a judgment of the District Court *in forma pauperis,* to apply for such leave from the Court of Appeals within 30 days of the date on which their applications for such relief from the District Court have been denied. The instant petitioner has complied with this Rule.

cation addressed to it, the Court of Appeals will have before it what is usually the *pro se* pleading of a layman and the certificate of a district judge that the applicant lacks "good faith" in seeking appellate review. The District Court's certificate is not conclusive, although it is, of course, entitled to weight.[11] However, we have recognized that the materials before the Court of Appeals at this stage of the proceedings are generally inadequate for passing upon the defendant's application. Nevertheless, if from the face of the papers he has filed, it is apparent that the applicant will present issues for review not clearly frivolous, the Court of Appeals should then grant leave to appeal *in forma pauperis*, appoint counsel to represent the appellant and proceed to consideration of the appeal on the merits in the same manner that it considers paid appeals. If, on the other hand, the claims made or the issues sought to be raised by the applicant are such that their substance cannot adequately be ascertained from the face of the defendant's application, the Court of Appeals must provide the would-be appellant with both the assistance of counsel and a record of sufficient completeness to enable him to attempt to make a showing that the District Court's certificate of lack of "good faith" is in error and that leave to proceed with the appeal *in forma pauperis* should be allowed.[12] If, with such aid, the applicant then presents any issue for the court's consideration not clearly frivolous, leave to proceed *in forma pauperis* must be allowed.

In so holding we have been impelled by considerations beyond the corners of 28 U. S. C. § 1915, considerations that it is our duty to assure to the greatest degree possible,

---

[11] *Johnson* v. *United States,* 352 U. S. 565, 566.

[12] *Johnson* v. *United States,* 352 U. S. 565, 566. See also *Farley* v. *United States,* 354 U. S. 521; *Ellis* v. *United States,* 356 U. S. 674; *Whitt* v. *United States,* 104 U. S. App. D. C. 1, 259 F. 2d 158.

within the statutory framework for appeals created by Congress, equal treatment for every litigant before the bar.[13] We have expressed this view in a case comparable to the one before us here by holding that

> "[u]nless the issues raised [by the indigent seeking leave to appeal *in forma pauperis*] are so frivolous that the appeal would be dismissed in the case of a nonindigent litigant, Fed. Rules Crim. Proc. 39 (a), the request of an indigent for leave to appeal *in forma pauperis* must be allowed." *Ellis* v. *United States,* 356 U. S. 674, 675.

The point of equating the test for allowing a pauper's appeal to the test for dismissing paid cases, is to assure equality of consideration for all litigants. The equation is intended to place the burdens of proof and persuasion in all cases on the same party—in these cases, on the Government. Since our statutes and rules make an appeal in a criminal case a matter of right, the burden of showing that that right has been abused through the prosecution

---

[13] Cf. *Griffin* v. *Illinois,* 351 U. S. 12, in which we were presented with a state law requiring defendants in all criminal cases in that State to furnish a bill of exceptions to the appellate court in which they sought review of their convictions. The bill of exceptions was difficult, if not impossible, to prepare without a stenographic transcript of the trial proceedings. Persons sentenced to death received transcripts at the expense of the State; all others were required to purchase a transcript. We found the failure of the State to provide for appellate review for indigents in non-capital cases, when such review was available for all defendants able to purchase transcripts, an "invidious discrimination" inconsistent with the guarantees of due process and equal protection of the laws of the Fourteenth Amendment. See also *Eskridge* v. *Washington State Board,* 357 U. S. 214; *Ross* v. *Schneckloth,* 357 U. S. 575; *Burns* v. *Ohio,* 360 U. S. 252; *Douglas* v. *Green,* 363 U. S. 192; *McCrary* v. *Indiana,* 364 U. S. 277; *Smith* v. *Bennett,* 365 U. S. 708, in which comparable state rules and practices, effectively limiting the poor person's access to courts ostensibly open to all, similarly have been found vulnerable.

of frivolous litigation should, at all times, be on the party making the suggestion of frivolity. It is not the burden of the petitioner to show that his appeal has merit, in the sense that he is bound, or even likely, to prevail ultimately. He is to be heard, as is any appellant in a criminal case, if he makes a rational argument on the law or facts. It is the burden of the Government, in opposing an attempted criminal appeal *in forma pauperis,* to show that the appeal is lacking in merit, indeed, that it is so lacking in merit that the court would dismiss the case on motion of the Government, had the case been docketed and a record been filed by an appellant able to afford the expense of complying with those requirements.[14] If it were the practice of a Court of Appeals to screen the paid appeals on its docket for frivolity, without hearing oral argument, reviewing a record of the trial proceedings or considering full briefs, paupers could, of course, be bound by the same rules. But, if the practice of the Court of Appeals is to defer rulings on motions to dismiss paid appeals until the court has had the benefit of hearing argument and considering briefs and an adequate record, we hold it must no less accord the poor person the same procedural rights.

Two additional factors have relevance to our view of the proper disposition of motions for leave to perfect criminal appeals *in forma pauperis.* These factors are the foundation for Rule 39 (d) of the Federal Rules of Criminal Procedure, specifying that preference shall be given by the Courts of Appeals to criminal cases. This Rule, first, acknowledges the importance to the sovereign,

---

[14] See *Brown* v. *United States,* 110 U. S. App. D. C. 310, 293 F. 2d 149; *United States* v. *Nudelman,* 207 F. 2d 109 (C. A. 3d Cir.). Cf. *United States* v. *Johnson,* 327 U. S. 106; *Smith* v. *United States,* 105 U. S. App. D. C. 414, 267 F. 2d 691; *Young* v. *United States,* 105 U. S. App. D. C. 415, 267 F. 2d 692; *United States* v. *Peltz,* 246 F. 2d 537 (C. A. 2d Cir.).

to the accused and to society of a criminal prosecution. When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged.[15] Second, the preference to be accorded criminal appeals recognizes the need for speedy disposition of such cases. Delay in the final judgment of conviction, including its appellate review, unquestionably erodes the efficacy of law enforcement.

Both of these considerations are particularly pertinent to criminal appeals *in forma pauperis*. Statistics compiled in the court below illustrate the undeniable fact that as many meritorious criminal cases come before that court through applications for leave to proceed *in forma pauperis* as on the paid docket, and that no *a priori* justification can be found for considering them, as a class, to be more frivolous than those in which costs have been paid.[16] Even-handed administration of the criminal law

---

[15] Justice Schaefer of the Supreme Court of Illinois, in the 1956 Oliver Wendell Holmes Lecture at the Harvard Law School, reprinted as Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 26 (1956).

[16] *Jones v. United States*, 105 U. S. App. D. C. 326, 328, 266 F. 2d 924, 926. There, Judge Bazelon pointed out that of 86 criminal appeals considered by the Court of Appeals within a period of approximately 15 months, 18 were prepaid, while 68 were considered after either the District Court or the Court of Appeals had granted leave to appeal *in forma pauperis*. Of this total, 14 of the prepaid appeals resulted in a judgment affirming the conviction; a similar majority of the paupers' appeals resulted in affirmance. However, during a comparable span between September 1, 1957, and February 28, 1959, 24 criminal appeals were decided by the Court of Appeals in which the

demands that these cases be given no less consideration than others on the courts' dockets. Particularly since litigants *in forma pauperis* may, in the trial court, have suffered disadvantages in the defense of their cases inherent in their impecunious condition, is appellate review of their cases any less searching than that accorded paid appeals inappropriate. Indigents' appeals from criminal convictions cannot be used as a convenient valve for reducing the pressures of work on the courts. If there are those who insist on pursuing frivolous litigation, the courts are not powerless to dismiss or otherwise discourage it. But if frivolous litigation exists, we are not persuaded that it is concentrated in this narrow, yet vital, area of judicial duty.

Similarly, statistics demonstrate the inevitable delay that surrounds a procedure in which the courts give piecemeal attention to the series of motions that indigents must make before a final adjudication of the merits of their cases is reached. Delays described in years between trial and final decision in criminal cases are the unhappy result of separate considerations of motions for the appointment of counsel, for the preparation of a transcript of the trial proceedings and, ultimately, for the leave to appeal *in forma pauperis*. The case before us illustrates the point. Petitioner was indicted on June 16, 1958, for offenses alleged to have been committed in early December 1957. He was first tried and convicted in December 1958. Leave to appeal *in forma pauperis* was

---

District Court had initially denied leave to appeal *in forma pauperis*. In 11 of those 24 cases, reversals were ordered, and in 6 more, one of the three judges of the court's panel dissented from the judgment affirming the conviction. During those same 18 months, the court granted 31 of 47 petitions for leave to take a direct appeal *in forma pauperis* from a conviction, and this Court subsequently reversed the denials of leave to appeal ordered in the cases of 5 of the 16 unsuccessful applicants in the court below.

granted by the District Court, and on June 23, 1959, the Court of Appeals reversed the conviction and remanded the case for a new trial. 106 U. S. App. D. C. 275, 272 F. 2d 504. In October 1959, new counsel was appointed by the District Court to represent petitioner at his second trial. Pre-trial motions were argued in the District Court in December 1959 and January 1960, and petitioner's trial took place in the first week of March 1960. Petitioner was convicted and then sentenced on March 11, 1960. On March 22, 1960, the District Court denied an application for leave to appeal *in forma pauperis*. An application for leave to appeal *in forma pauperis* was then directed to the Court of Appeals, and was filed in that court on April 15, 1960. On April 20, that court appointed counsel to represent petitioner, and on June 15, 1960, counsel filed a 30-page memorandum in support of the petition for leave to appeal. The following day, the Government answered with a memorandum stating that it believed it appropriate for the court to order the preparation of a transcript at government expense before ruling on the petition for leave to appeal. Petitioner objected to this procedure on the grounds that his memorandum sufficiently indicated that non-frivolous issues were present in his case and that further delay in allowing the appeal was, therefore, unwarranted. On July 1, 1960, the Court of Appeals ordered the preparation of a transcript at the expense of the United States. The transcript became available August 15, 1960, and the Government's opposition to petitioner's application for leave to appeal *in forma pauperis* was filed, pursuant to an extension of time granted by the court, on September 2, 1960. The Government, misconceiving the issue as we understand it, claimed the points sought to be raised were "not sufficiently substantial" to warrant an appeal *in forma pauperis;* it did not suggest the appeal sought was "frivolous." Petitioner filed a reply memorandum on

September 8.   On November 5, 1960, the court, one judge dissenting, denied the petition for leave to appeal *in forma pauperis*.   The petition for certiorari was filed in this Court on November 16, 1960, and was granted on June 19, 1961.   366 U. S. 959.   We heard oral argument in December 1961, and our present disposition of the case, remanding it for reconsideration by the Court of Appeals on an intermediary step, still far from the end of petitioner's course through the courts on his original conviction, is now ordered more than four years after the commission of the offenses for which petitioner was tried and more than two years from the date of the trial and judgment petitioner seeks to have reviewed.[17]

In the light of this delay, it is not surprising that petitioner asks us to reach the merits of his case immediately. However, delay alone, unfortunate though it is, is not sufficient cause to bypass the orderly processes of judicial review.   Contrary to the Government's assertion here that petitioner has already received what amounts to

---

[17] The instant case is not unique in this regard. See, *e. g., Johnson:* Indicted (March 1956), tried (May 1956), appeal *in forma pauperis* denied, 238 F. 2d 565 (C. A. 2d Cir. 1956), vacated, 352 U. S. 565 (1957), conviction affirmed on the merits, 254 F. 2d 175, petition for certiorari dismissed per stipulation of parties, 357 U. S. 933 (June 1958) ; *Farley:* Indicted (December 1955), tried (May 1956), application for leave to appeal *in forma pauperis* remanded to District Court, 238 F. 2d 575 (C. A. 2d Cir. 1956), appeal *in forma pauperis* denied, 242 F. 2d 338, vacated, 354 U. S. 521 (1957), remanded to District Court for settling transcript (December 1960), appeal *in forma pauperis* granted by District Court (May 1961), conviction affirmed on the merits, 292 F. 2d 789 (1961), cert. denied, 369 U. S. 857 (April 1962) ; *Ellis:* Indicted (April 1956), tried (September 1956), appeal *in forma pauperis* denied, 101 U. S. App. D. C. 386, 249 F. 2d 478 (1957), vacated, 356 U. S. 674 (1958), conviction affirmed on the merits, 105 U. S. App. D. C. 86, 264 F. 2d 372, cert. denied, 359 U. S. 998 (May 1959), motion for leave to file petition for rehearing denied, 361 U. S. 945 (January 1960).

plenary review of the conviction following his second trial, we hold petitioner has not yet received the benefits of presenting either oral argument or full briefs on the merits of his claims to the court first charged with the supervision of the trial court.[18] The memoranda prepared by counsel in support of petitioner's application for leave to appeal *in forma pauperis* were not intended to be, nor are they rightly considered as, full appellate briefs. But they do serve to demonstrate that petitioner sought consideration of issues that it would be difficult for an appellate court to consider so patently frivolous as to require a dismissal of petitioner's case without full briefing or argument. In so saying, we need not, and do not, express any opinion on whether petitioner's conviction should ultimately be affirmed or reversed. We only hold that taken as a whole, petitioner's various claims cannot justify the summary disposition of his case ordered below.

The first of numerous claims asserted by the petitioner is that the indictment against him was procured through the use of perjured testimony before the grand jury. This Court has not yet decided whether such a charge, if proven, would require the reversal of a criminal conviction based upon an indictment returned by a grand jury hearing the perjury. But we have granted certiorari and given full consideration to related issues in other cases. See, *e. g., Costello* v. *United States,* 350 U. S. 359 (hearsay evidence considered by grand jury); *Lawn* v. *United States,* 355 U. S. 339 (illegally seized evidence considered by grand jury); *Beck* v. *Washington, post,* p. 541 (alleged inflammatory publicity surrounding state grand jury deliberations).

Petitioner also claims that he has been unable to prove his charge that perjured testimony was presented to the

---

[18] This argument was also presented by the Government, and then rejected by us, in *Lurk* v. *United States,* 366 U. S. 712.

grand jury because of the refusal of the courts below to permit him to examine the transcript of the grand jury's proceedings. Again, although in the particular context of this case access to the normally secret minutes of the grand jury may ultimately be held to have been properly denied, recent volumes of the United States Reports and the Federal Reporter include a number of opinions in which the extent of the secrecy normally attached to grand jury minutes has been explored.[19]

A number of other arguable claims were also made by petitioner to support his application for leave to appeal. But we believe those mentioned would alone have warranted the allowance of an appeal *in forma pauperis*. They meet the test of being sufficiently reasonable to withstand a claim that their frivolity is so manifest that they merit no further argument or consideration, and that dismissal of petitioner's case is, therefore, in order. The judgment of the Court of Appeals is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Frankfurter took no part in the decision of this case.

Mr. Justice White took no part in the consideration or decision of this case.

---

[19] See, *e. g., Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S. 395, 399–400; *De Binder* v. *United States,* 110 U. S. App. D. C. 244, 246, 292 F. 2d 737, 739; *United States* v. *Rose,* 215 F. 2d 617, 628–630 (C. A. 3d Cir.) ; *Parr* v. *United States,* 265 F. 2d 894, 901–904 (C. A. 5th Cir.), reversed on other grounds, 363 U. S. 370.  Cf. *United States* v. *Procter & Gamble Co.,* 356 U. S. 677, 682–684.  See Louisell, Criminal Discovery: Dilemma Real or Apparent? 49 Calif. L. Rev. 56, 68–71 (1961) ; Note, Inspection of Grand Jury Minutes by Criminal Defendants, 1961 Wash. U. L. Q. 382.

MR. JUSTICE STEWART, with whom MR. JUSTICE BRENNAN agrees, concurring.

In joining the opinion and judgment of the Court, I think it appropriate to add a few words. The rule of *Ellis* v. *United States* is a simple one. An appeal *in forma pauperis* must be allowed in a criminal case "unless the issues raised are so frivolous that the appeal would be dismissed in the case of a nonindigent litigant." 356 U. S. 674, 675. The difficulties which the Courts of Appeals have encountered in applying this simple and practical test are largely, I think, of their own making.

These difficulties may stem in part from a failure to consider the *in forma pauperis* statute in the context of the over-all scheme governing criminal appeals. Our statutes and rules make an appeal in a criminal case a matter of right. The provisions governing appeals *in forma pauperis* are not to be read as diluting that right by imposing a more stringent test of merit. Rather, 28 U. S. C. § 1915 provides at most a device for advance screening of appeals which, if paid, would upon motion be dismissed before argument as frivolous. The only justification for such a preliminary screening is the absence of the built-in pecuniary brake upon frivolous appeals which is present in nonindigent cases. There is no other difference between paid and unpaid appeals. In both, the burden of showing that the right to appeal has been abused is on the party making the suggestion.

It has been said that a District Court's certification that an appeal is not taken in good faith is entitled to great weight. *Johnson* v. *United States,* 352 U. S. 565, 566. Nevertheless, if a District Court has denied leave to appeal *in forma pauperis,* the Court of Appeals has the ultimate responsibility of deciding for itself whether the appeal is frivolous. Justice demands an independent and objective assessment of a district judge's appraisal of his

own conduct of a criminal trial. Anything less would impose a disability upon indigent defendants far greater than that contemplated by the preliminary screening provision which § 1915 permits. The statutory safeguard against overindulgence in free frivolous appeals cannot be allowed to impinge upon the fundamental right of every litigant, rich or poor, to equal consideration before the courts.

When a Court of Appeals chooses to utilize the preliminary screening device permitted by § 1915, difficulties of the kind evident in this case frequently arise. The bare application for leave to appeal *in forma pauperis* seldom furnishes sufficient material for evaluating the weight of the issues involved. For this reason, we have held that in such cases a Court of Appeals must provide the applicant with the assistance of counsel and with a record of sufficient completeness to give him full opportunity to show that the appeal is in "good faith." *Johnson* v. *United States, supra; Farley* v. *United States,* 354 U. S. 521. In the course of such proceedings, however, experience has shown that there may be a tendency to lose sight of the precise issue before the court at this point—whether the appeal is so frivolous that it would be dismissed even if all the fees had been paid. Obviously arguments concerning the weight of the issues raised by an appeal are difficult to disengage from arguments dealing with the ultimate merits of these same issues. Understandably and commendably, counsel for indigent defendants often exert every effort to prove the substantial nature of their clients' claims—an exertion of energy which draws a similar effort from government counsel. The product of these forces is a procedure which may bear close superficial resemblance to the appeal itself.

The result is that a Court of Appeals may come to think of these preliminary proceedings as tantamount to appeals on the merits, and may tend to decide whether or

not to grant leave to appeal by appraising the entire case in terms of whether or not reversible error appears. By the same token, when leave to appeal has been denied, and the case has come here, the Government has argued in the past, as it argues in this case, that the preliminary screening procedure was itself the equivalent of an affirmance on the merits. See *Lurk* v. *United States,* 366 U. S. 712.

This attempted conversion of the proceedings to determine good faith into a truncated substitute for appeal distorts the purpose of § 1915, and, if accepted, would raise serious questions of due process. The filing of memoranda in support of an application for leave to appeal is not an appeal. The merits of the ultimate issues are not logically involved at this point, but only the weight of those issues. Appellate briefs are not written or submitted. There is no oral argument. The court's mode of considering such memoranda, as a matter of internal machinery, may markedly differ from the process employed in the decision of cases actually on appeal. For all these reasons the interim proceeding permitted by § 1915 cannot itself be deemed to constitute the appeal to which a person convicted of crime in the federal courts is entitled.

In addition to the danger of equating the "good faith" determination with the appeal itself, there are other disadvantages inherent in compelling the parties to go through the preliminary procedure permitted by § 1915. It is a serious imposition upon appointed counsel to require dissipation of energy and time in preliminary skirmishing. Moreover, the delay occasioned by this extended interim proceeding is itself offensive to the ideal of speedy administration of criminal justice.

The primary responsibility for containing within limited bounds the separate "good faith" proceeding permitted by § 1915 rests upon those Courts of Appeals

which choose to utilize this system of dealing with *in forma pauperis* appeals. While I would not deny great latitude to the various circuits autonomously to devise their own procedures consistent with their appraisal of local conditions and needs, the courts' duty in this area can be properly achieved only by keeping in mind the very limited test of "good faith" which the *Ellis* case established.

This suggests that each Court of Appeals might well consider whether its task could not be more expeditiously and responsibly performed by simply granting applications to appeal from criminal convictions *in forma pauperis* as a matter of course, and appointing counsel to brief and argue each case on the merits. The Government would then be free in any case to file before argument a motion to dismiss the appeal as frivolous, as every appellee is always free to do. In the absence of such a motion an appeal which after argument appeared clearly without merit could be expeditiously disposed of by summary affirmance, in the secure knowledge that all the issues had been fully canvassed. This procedure, it seems to me, would not only save the time and energy of court and counsel, but would obviate the many difficulties which, as the present case shows, the complicated two-step system is all too likely to produce.

Mr. Justice Clark, with whom Mr. Justice Harlan joins, dissenting.

## I.

Congress has provided that no indigent appeal may be taken "if the trial court certifies in writing that it is not taken in good faith," *i. e.,* is frivolous. 28 U. S. C. § 1915 (a). With the opinion today the Court for all practical purposes repeals this statute by placing the burden on the Government to sustain such a certification

rather than on the indigent to overturn it. This position is a *sub silentio* reversal of our previous holding in *Farley* v. *United States,* 354 U. S. 521, 523 (1957), where we said that "petitioner has not yet been afforded an adequate opportunity to show the Court of Appeals that his claimed errors are not frivolous. . . ." Accord, *Johnson* v. *United States,* 352 U. S. 565 (1957).[1] Moreover, the Court goes against a long line of cases holding that the trial judge's certificate of frivolity is entitled to "great weight"—a rule which the opinion here notes but fails to recognize. If the finding is entitled to "great weight," in fact controlling weight in the absence of "some showing that the certificate is made without warrant . . . ," *Wells* v. *United States,* 318 U. S. 257, 259 (1943), how can it be said the Government has the burden of upholding it? The Court seems to say the burden is upon the Government because when it files a motion to dismiss in a nonindigent case it has the burden of showing frivolity. I submit the two are not at all analogous. In the case of paid appeals Congress has not provided for a determination by the trial court of whether the issues warrant further review, and to treat nonpaid appeals like paid appeals is to ignore such a provision in the statute governing indigent appeals.

The Court does not make clear on what grounds it bases its assumption that the Government has the burden of showing frivolity. It professes to act "within the statutory framework for appeals created by Congress"; but it intimates that it is "impelled by considerations beyond the corners of 28 U. S. C. § 1915," and the touchstone of its opinion is a principle arising from cases based on the Equal Protection Clause of the Fourteenth Amend-

---

[1] *Ellis* v. *United States,* 356 U. S. 674 (1958), is inapposite. There the Court was concerned with the standard governing the allowance of appeals *in forma pauperis,* not with where rests the burden of showing frivolity in the face of a certification by the trial court.

ment. I do not believe, however, that a disparity in the burden of showing frivolity denies equal justice as between paid and nonpaid appeals. They both remain subject to the same peril. Congress has set up a special procedure which subjects every nonpaid appeal to an examination to determine if further briefing and oral argument are necessary. Such an examination in the case of paid appeals is left to the initiative of the court or the Government. This distinction does not give rise to a discrimination of constitutional proportions. As was pointed out in *Hirabayashi* v. *United States,* 320 U. S. 81, 100 (1943), "[t]he Fifth Amendment contains no equal protection clause and it restrains only such discriminatory legislation by Congress as amounts to a denial of due process. . . . Congress may hit at a particular danger where it is seen, without providing for others which are not so evident or so urgent." I see no constitutional impediment to asking one who seeks a free ride to show that he is not just a joyrider. Although a government that affords appellate review must pay the cost of meritorious indigent appeals, surely it may protect itself from frivolous ones (which incidentally in numbers overwhelmingly predominate) being "subsidized and public moneys . . . needlessly spent." *Griffin* v. *Illinois,* 351 U. S. 12, 24 (1956) (concurring opinion).

## II.

The Court holds that petitioner is entitled to oral argument in the Court of Appeals on new briefs. An examination of the record shows that the action of the Court of Appeals was on the basis of a complete transcript and extensive briefs filed by counsel. With due deference to the Court's suggestion that these briefs were only preliminary, I find them to be substantially similar in both bulk and substance to the ones filed here on which petitioner asks for a decision on the merits. Upon such

presentation the Court of Appeals found itself satisfied that petitioner's conviction was proper. It is true that no oral argument was permitted. However, having come to the conclusion that the case had no merit, the court had to put a stop to the review proceeding. This is true whether the appeal is paid or nonpaid. See *United States* v. *Johnson,* 327 U. S. 106 (1946). We adjudicate most of our appeals in the same manner, *i. e.,* by dismissing or affirming on the briefs without argument. Inasmuch as the case had arisen within the procedural confines of appeals *in forma pauperis,* the Court of Appeals simply denied leave to appeal. It could have granted leave to proceed and then summarily affirmed or dismissed the appeal under Rule 39 (a), Fed. Rules Crim. Proc. I see no substantial distinction between the two dispositions.

The Court, however, is remanding the case for further review proceedings because it has concluded that at least two of petitioner's claims are not frivolous and that the Court of Appeals therefore erred in not allowing the review to run its full length. The Court in reaching this conclusion has, in my view, misplaced the burden on the issue of frivolity, but even assuming *arguendo* that petitioner's contentions are not frivolous, I cannot agree to the fruitless approach the Court has taken.

To be sure, frivolity or some analogous standard delimits those appeals, paid or nonpaid, which can be decided without oral argument. However, it would seem that any error by a Court of Appeals in evaluating frivolity *upon such a full presentation as was had below* is often not only incorrectable but harmless. Concededly, this Court has of late consistently remanded cases in which a Court of Appeals has mistakenly characterized contentions as frivolous. Experience has shown this tack to be unsatisfactory, and perhaps it is now time to re-evaluate our approach.

This is not to say that we should do a complete turn about and never remand a case for further review. What I am suggesting is that we give substance to the congressional mandate and yet analyze, *inter alia*, the thoroughness of the review below, the character of the issues raised, the beneficiality of further action by a lower court, and the strength or weakness of the contentions made. Applying such criteria to the present case, I am convinced that to remand this case will only compel the lower court to go through wasteful formalities to the detriment of its consideration of other appeals and put off to another day action by this Court.[2] The Court speaks of long delays, but by remanding it appears to have contributed to the very evil which it seeks to eliminate. I would follow the teaching of *Pollard* v. *United States*, 352 U. S. 354 (1957), and *Holiday* v. *Johnston*, 313 U. S. 342 (1941), and decide the merits of petitioner's contentions *now*. I therefore dissent.

---

[2] For a case in which a similar warning was sounded, see *Lurk* v. *United States*, 366 U. S. 712 (1961) (dissenting opinion). Subsequent events have shown this admonition to be words of wisdom indeed. See 111 U. S. App. D. C. 238, 296 F. 2d 360, certiorari granted, 368 U. S. 815. [For subsequent decision of this Court, see 370 U. S. 530 (1962).]