James **DAVIS**, Petitioner,

v.

**UNITED STATES** of America,
Respondent.

No. 70 C 120(2).

United States District Court,
E. D. Missouri, E. D.

June 26, 1970.

Joseph J. Dolgin, Clayton, Mo., for petitioner.

Daniel Bartlett, Jr., U. S. Atty., James M. Gordon, Asst. U. S. Atty., St. Louis, Mo., for respondent.

### MEMORANDUM

MEREDITH, District Judge.

This matter is before the Court for a decision on the motion to vacate judgment and sentence, filed March 13, 1970, by James Davis. Davis was convicted in cause No. 63 Cr 150(2) of two counts of possession and two counts of sale of heroin, and sentenced to a term of fifteen years imprisonment. A hearing on the motion was held on June 19, 1970. Davis was represented by his court-appointed attorney, Joseph J. Dolgin.

Davis' motion alleges that he was abandoned by his retained trial attorney, Carl I. Katzen, after sentencing, and thereby suffered dismissal of his direct appeal on motion of the Government's attorney. The files and record show that Davis was indicted on June 6, 1963, and, after arrest, released on $10,000.00 bond. Davis was arraigned on June 24, 1963, represented by his retained attorney Carl I. Katzen. After certain motions were denied, including one to suppress evidence, a trial was held on August 19 and 20, 1963, resulting in a guilty verdict. Post-trial motions for judgment of acquittal and in the alternative for a new trial were filed and overruled. On September 9, 1963, Davis was given four concurrent fifteen-year sentences.

At the hearing, on June 19th, testimony on behalf of the motion was offered by Davis and his common-law wife, Mrs. Dorothy Theriot. Opposition testimony was offered by Carl I. Katzen, Davis' former attorney. The only issues of fact, which were disputed, were whether Davis wanted to take an appeal following the trial and whether Katzen was asked to take that appeal.

During the course of the original proceedings in federal court, Davis met with Katzen some three to five times at Katzen's law office in downtown St. Louis, Missouri. Davis was always accompanied by either Mrs. Theriot (known to Katzen as Davis' sister) or by Davis' mother. Davis informed Katzen that he was living "at home" and working in a restaurant owned by his

mother. Davis was, at each visit, expensively dressed and carried a large sum in cash. At all times he was lucid in his conversation. Katzen's impression was that Davis came from a close knit and supportive family.

Katzen was paid a total of about $800.00 by Davis or Mrs. Theriot for his representation, always in the form of cash. A portion of this fee was meant to cover Katzen's attempts to reclaim Mrs. Theriot's 1961 Ford Thunderbird, which had been seized from Davis' possession by federal agents at the time of arrest.

Davis and his family were reasonably well situated financially. His mother owned a restaurant at 5070 Easton and a four-family apartment building. Mrs. Theriot, a former Captain in the United States Army, worked as a registered nurse at the Cochran Veterans Hospital in St. Louis. Davis testified at the hearing that in 1963 he was earning approximately $100.00 per week from work at his mother's restaurant and as a professional musician.

As to taking an appeal, Davis testified that he asked Katzen to take an appeal and Katzen said he would do so; that Davis did not pay Katzen for taking an appeal, but left that up to his wife; and that Katzen never told him about procedures whereby a person without funds may appeal as a poor person. Davis was not certain about when and where he asked Katzen to appeal.

Katzen's testimony was more detailed and almost exactly opposite. After the trial was completed, but prior to sentencing, a meeting was held at Katzen's law office, attended by Katzen, his secretary, Davis, Mrs. Theriot, Davis' mother, and Mr. Louis Beck, Katzen's law partner. The topics discussed at this meeting were the possibility of an appeal, appeal grounds, fee for an appeal, the fact of Davis' addiction to heroin, and the possibilities of hospitalization and treatment. Katzen identified Government's Exhibit A as the file copy of an August 23, 1963, letter to Davis which outlines the necessity of such a meeting and the topics to be discussed.

Katzen's recollection of the result of this conference was two-fold: (1) the family believed that Davis might be able to cure his addiction, if he were confined, and (2) the family possessed funds for an appeal, but it was their preference not to pursue an appeal. Davis' mother suggested that her ownership of the restaurant could serve as security for the cost of an appeal.

Katzen's memory of these events is supported by the correspondence from his file. All papers in his possession which related to taking an appeal or other post-trial matters, were removed, marked as Government's Exhibits A through F, and introduced into evidence. Exhibit B, a receipt from the Clerk for payment of the $5.00 filing fee for filing a notice of appeal, shows that Katzen filed a timely notice of appeal on Davis' behalf. Three days later Katzen wrote Davis requesting he make fee arrangements for an appeal and payment of docket deposit.

Katzen testified that he was not told to take an appeal by Davis or his family and that he was not paid any money meant to compensate him for handling an appeal.

Only one other item in Katzen's file mentions James Davis' confinement, a letter dated October 1, 1963, to Katzen from Mrs. Theriot. The first paragraph of that letter relates that Davis had written his common-law wife from Leavenworth Penitentiary "and he wanted me to ask you (Katzen) about hospitalizations, as up to now he has received no medical care." No mention was made of any appeal in that letter.

■■ A person accused of a crime is entitled to representation by counsel at all critical stages of trial and appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967);

Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). An appeal from a conviction in federal court is a matter of right. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The right to appeal may be waived. DeJordan v. United States, 187 F.2d 263 (8th Cir. 1951), cert. denied 341 U.S. 942, 71 S.Ct. 996, 95 L.Ed. 1368 (1951).

The petitioner relies upon Williams v. United States, 402 F.2d 548 (8th Cir. 1968). There, the petitioner was abandoned by his attorney after the jury trial. More specifically, the attorney failed to inform the petitioner of his right to appeal as a poor person.

Based upon the evidence presented at the June 19, 1970, hearing, it is the opinion of the Court that the petitioner has failed to show that he had ineffective assistance of counsel at any stage of the original proceedings.

The *Williams* case is factually distinguishable from this case. Here the credible evidence showed two things: (1) Davis and his family made an affirmative decision not to appeal the conviction; (2) Davis was not a pauper. This would relieve his attorney from his duty of informing Davis about appeals in forma pauperis. There was no credible evidence that either Davis or his family ever communicated a desire to Katzen to take an appeal from the conviction. In fact, the evidence shows that Katzen was more interested in the appeal problems than either Davis or his family. Davis was a narcotic addict at the time. His common-law wife, a registered nurse, felt hospitalization or some type of confinement was desirable for Davis. Her only communication with Katzen dealt with that and not an appeal. There was no evidence that Davis ever called or wrote Katzen about appeals. In short, there is no evidence to establish petitioner's claim of ineffective assistance of counsel and the cause will be dismissed.