Juana BALBUENA, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 99 Civ. 6097 RWS.

United States District Court,
S.D. New York.

June 16, 2000.

Gino Josh Singer, New York, NY, for Petitioner.

Honorable Mary Jo White, United States Attorney for the Southern District of New York, New York, NY, By Jason M. Weinstein, Assistant U.S. Attorney, for Respondent, of counsel.

## OPINION

SWEET, District Judge.

Juana Balbuena ("Balbuena") has petitioned, pursuant to 28 U.S.C. § 2255, for vacatur of a sentence imposed by the Honorable Sonia Sotomayor on November 13, 1997. More specifically, Balbuena contends that she was denied her right to effective assistance of counsel under the Sixth Amendment because her attorney, Charles Lavine ("Lavine"), erroneously advised her to refrain from stipulating to deportation even though she would have been eligible for a downward departure in her sentence based on such a stipulation.

For the reasons set forth below, the petition is denied.

### Prior Proceedings

On or about June 4, 1997, Balbuena executed a plea agreement (the "Plea Agreement") with the Government. The Plea Agreement included a stipulation regarding application of the United States Sentencing Guidelines ("the Guidelines") to Balbuena's offense conduct, according to which the parties stipulated that Balbuena's total offense level was 33, her criminal history category was I, and the applicable sentencing range was 135–168 months' imprisonment. On or about June 4, 1997,

Balbuena pled guilty to conspiracy to distribute and possess with intent to distribute narcotics in violation of 21 U.S.C. § 846. On November 13, 1997, she was sentenced to 135 months' incarceration, to be followed by a five-year term of supervised release. Balbuena is presently serving her sentence.

On or about November 19, 1997, Balbuena filed a notice of appeal. On or about January 26, 1998, Balbuena's counsel, Lavine, filed a motion to be relieved as appellate counsel and to have new counsel appointed on the ground that one of the issues Balbuena planned to raise on appeal was the adequacy of his representation in connection with her plea and sentencing. That motion was granted on or about February 9, 1998. On or about May 1, 1998, after two other changes of counsel, Gino Josh Singer ("Singer") was substituted as counsel of record.

On or about June 24, 1998, Balbuena filed a motion to withdraw her appeal without prejudice so she could pursue her claim of ineffective assistance of counsel through the instant petition, on the ground that the facts necessary to adjudicate this claim were not fully developed on the record below. On or about July 14, 1998, the Court of Appeals denied the motion without prejudice to the filing of a stipulation. On or about August 14, 1998, the Court of Appeals dismissed the appeal for failure to comply with a previous scheduling order. On or about August 25, 1998, the Government and Balbuena, through Singer, executed a stipulation withdrawing Balbuena's appeal without prejudice to reinstatement upon the conclusion of proceedings relating to the instant petition. On or about August 26, 1998, Balbuena submitted simultaneous motions to reinstate the appeal and to withdraw the appeal without prejudice upon its reinstatement. The motion to reinstate the appeal was granted on or about September 2, 1998 and the motion to withdraw the appeal without prejudice was granted on or about September 11, 1998.

The instant petition was filed on June 30, 1999. After affording the Government an opportunity to respond, the petition was deemed fully submitted as of February 9, 2000.

*Discussion*

### I. Balbuena's Claim Of Ineffective Assistance Of Counsel Is Not Barred By The Plea Agreement

As an initial matter, the Government contends that Balbuena's claim is barred by the Plea Agreement, which included the following provision:

> It is further agreed ... that the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Guidelines range.... Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

The Government avers that pursuant to this provision Balbuena waived her right to challenge either on direct appeal or by way of collateral attack any sentence within or below the stipulated sentencing range. Balbuena's sentence of 135 months was within the stipulated range of 135 to 168 months' incarceration.

The question of the validity—or scope thereof—of a defendant's waiver of her right to file a collateral attack has not yet been addressed directly by the Second Circuit. There is little question that a defendant's knowing and voluntary waiver of his right to direct appeal of a sentence within an agreed-upon range is enforceable. *See United States v. Djelevic,* 161 F.3d 104, 106–07 (2d Cir.1998). At the same time, even a waiver of the right to direct appeal is enforceable only if it was knowing and voluntary, the sentence was within the stipulated range, and there are no extraordinary circumstances making enforcement of the agreement contrary to

public policy. *See United States v. Rosa,* 123 F.3d 94, 97–98 (2d Cir.1997); *Ocasio v. United States,* No. 99 Civ. 9045, 2000 WL 460459, at *3 (S.D.N.Y. April 18, 2000).

Although some circuit courts have upheld waivers of collateral attack, *see, e.g., Watson v. United States,* 165 F.3d 486, 489 (6th Cir.1999), others have not enforced the waiver when the petitioner claims ineffective assistance of counsel or involuntariness of the waiver, *see Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir.1999); *see also United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994) (upholding waiver because informed and voluntary); *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993) (declining to hold that waiver forecloses claim of ineffective assistance or involuntariness), *cert. denied,* 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993). In addition, a number of district courts within this circuit have held that a Section 2255 petitioner should not be deemed to have waived the right to challenge her sentence where the ground for attack is ineffective assistance of counsel or that the plea or waiver was not knowing and voluntary. *See, e.g., Ocasio,* 2000 WL 460459, at *3; *Ramirez v. United States,* 963 F.Supp. 329, 331–32 (S.D.N.Y.1997).

█ The reasoning of those courts which have not enforced a Section 2255 waiver where the petitioner raises a claim of ineffective assistance of counsel or involuntariness is persuasive and is adopted in considering the instant motion. As the court noted in *Jones,* "[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation [or plea] agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness." 167 F.3d at 1145. Therefore, Balbuena's claim is not barred by the Plea Agreement and the Court will consider it on the merits.

## II. *Balbuena Has Not Established That Her Counsel Was Ineffective*

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-pronged test to determine whether a claim of ineffective assistance of counsel in violation of the Sixth Amendment right to counsel was established. Under this test, the petitioner must establish that (1) his attorney's performance "was unreasonable under prevailing professional norms and that the challenged action was not sound strategy," *id.* at 688–89, 104 S.Ct. 2052, and (2) there is a reasonable possibility that, "but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052.

█ Balbuena alleges that Lavine recommended she not agree to stipulate to deportation even though she initially told him she wanted to do so. Balbuena further alleges that Lavine "did not adequately explain certain aspects of the case" relating to the possibility of stipulating to deportation or, as it is otherwise known, agreeing to "judicial deportation". Balbuena contends that in making her decision she relied on Lavine's erroneous and inadequate advice. In essence, Balbuena's contention is that because Lavine was ineffective in advising her that her decision to forego judicial deportation and its potential benefits was not knowing and voluntary. *Cf. Luna v. United States,* No. 98 Civ. 7970, 1999 WL 767420, at *3 (S.D.N.Y. Sept. 28, 1999) (defendant's contention that he agreed to waive appeal rights was due to ineffective assistance to be construed as claim that his waiver not knowing and voluntary). The issue here therefore turns upon whether Lavine's performance was unreasonable and the effect it had on Balbuena's decision-making process.

It should be noted that Lavine contends that he made no recommendation as to whether Balbuena should enter into the stipulation but instead only discussed the matter with her and let her decide. Even assuming that he did make an affirmative

recommendation, however, he was not ineffective under *Strickland.*

According to both Balbuena and Lavine, their discussion included consideration of the possibility of her benefitting as to sentencing from third-party cooperation by her son—who was indicted in the same case—in the event he chose to surrender and cooperate. Balbuena alleges that Lavine recommended she pursue that option rather than judicial deportation. She asserts that Lavine's recommendation was contrary to the general practice in the Southern District at the time according to which defense attorneys "regularly" advise their non-citizen clients to stipulate to deportation in order to obtain sentencing departures. She further asserts that the third-party cooperation option was too speculative to constitute a viable alternative. Balbuena essentially contends that it was per se ineffective assistance of counsel for an attorney in this district to recommend to a non-citizen client not to stipulate to deportation at the time she was sentenced. This position does not comport with *Strickland,* however, in which the Supreme Court observed that " '[t]here are countless ways to provide effective assistance in any given case,' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.' " *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990) (*quoting Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Lavine's recommendation, assuming it occurred, was based on consideration of an alternative way of obtaining a downward departure—one which would not foreclose Balbuena from contesting her deportation.

A recommendation by Lavine that Balbuena not stipulate to deportation thus represented one strategic choice among others that was not unreasonable on the circumstances of the case. Ultimately, the possibility of a departure based on third-party cooperation was not realized. But a fair assessment of an attorney's performance under the Sixth Amendment cannot be made with the benefit of hindsight. *See*

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Nor is it sufficient that in looking back we might deem the choice made to be less meritorious than the one rejected. The question is whether or not the course pursued "might be considered sound [ ] strategy" by the attorney at the time. *Id.* at 689, 104 S.Ct. 2052. That question must be answered affirmatively here.

This conclusion is further supported by Lavine's assertion, which is uncontradicted by Balbuena, that they discussed her desire to petition the INS to remain because she wanted to try to stay with her family in the United States. This consideration would have provided yet another reason to make the strategic choice not to recommend stipulating to deportation since that would have eliminated any hope, even if slim, of remaining in the United States. In short, whether Lavine affirmatively recommended that Balbuena not consent to judicial deportation, or merely discussed the issue with her, in the end he engaged in what could be viewed as reasonable defense strategy under *Strickland.*

Moreover, with respect to Balbuena's claim that Lavine did not adequately explain the option of judicial deportation, the record shows otherwise. First, Balbuena admits in her own affidavit that:

> Before I pleaded guilty, Mr. Lavine discussed with me the terms of a plea agreement he had reached with the government. He explained the amount of time I was likely to receive under this agreement, and went over the written agreement with me.

> During that meeting, Mr. Lavine ... informed me of a memorandum and policy that had been implemented by the United States Attorney General in 1995, and which encouraged the United States attorneys offices to recommend sentence reductions in exchange for plea agreements that include consent to judicial deportation by non-citizens such as myself.

As discussed above, Balbuena's affidavit and Lavine's declaration further reveal that she and Lavine discussed her options, her concerns regarding these options, and the advantages and disadvantages of each. Balbuena also testified during the plea proceeding that she had a full opportunity to discuss her case, including the consequences of entering a plea of guilty, with Lavine, and that she was satisfied with his representation.

Although there are cases in which "a breakdown in communications between counsel and client may constitute ineffective assistance ... affect[ing] the validity of any subsequent plea action," *Luna*, 1999 WL 767420, at *4, no such breakdown occurred here. Balbuena's allegation that Lavine was ineffective because he "failed to adequately explain" the judicial deportation option is belied by the record.[1] Nor does the record support her contention that her decision was based on unwitting reliance on Lavine's advice.

Finally, the record of the plea proceeding provides yet further evidence that Balbuena's decision was not an uninformed one. At that proceeding the court itself took pains to explain the judicial deportation issue to Balbuena and the Government explained its position on the record:

> The Court: Is everything anyone has told you, and anyone means the government or your lawyer, has everything anyone told you about your plea or sentence in this letter?
>
> The Government: Your honor.... Mr. Lavine informed me today that Ms. Balbuena may wish to enter into a stipulation of deportation, and as I informed him, is she does so and the necessary paperwork is completed prior to sentencing, the government would not oppose the additional one

point downward departure, so that that is in addition in terms of the plea agreement.

> The Court: Ms. Balbuena, you must decide whether you are going to agree to be deported well before your sentence. You can't wait for me to give you your sentence and then decide that you want to cooperate with deportation to get a lower sentence, it must be decided well before then. Do you understand this?
>
> The Defendant: Yes.

Thus, the option of judicial deportation was not only explained and discussed sufficiently in the context of Balbuena's conferrals with Lavine, but was the subject of further exploration during the plea proceeding itself. The Court concludes that Balbuena made a knowing and voluntary choice to forego judicial deportation, and that she was not led blindly astray by her counsel.

Because Balbuena's decision was not the result of ineffective performance on the part of Lavine, she cannot satisfy the first prong of the *Strickland* test, and it is unnecessary to determine under the second prong of *Strickland* whether the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

### Conclusion

For the reasons set forth above, Balbuena's petition is denied. Furthermore, as Balbuena has not made a substantial showing of the denial of a constitutional right a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this order *in forma pauperis* would not be taken in good faith. *See Coppedge v. United States*, 369 U.S.

---

1. The Court notes that in her legal memorandum Balbuena stresses her fifth-grade education and inability to speak English, implying that these circumstances caused her to rely on Lavine more than she would have otherwise. In Balbuena's affidavit, however, she states unequivocally that her educational level and language limitations were "not the problem". Thus, her decision was not an uninformed one based on those circumstances.

438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

It is so ordered.