**Mario Abreu DIAZ, Petitioner,**

v.

**Edward J. McELROY, District Director, United States Immigration and Naturalization Service, Respondent.**

**No. 98 Civ. 8654(DAB).**

United States District Court,
S.D. New York.

March 7, 2001.

Mario Abreu Diaz, Hawley, PA, Pro se.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Petitioner Mario Abreu Diaz, an alien currently held in custody pending removal, challenges both the removal order and his continued detention without bail, pursuant to 22 U.S.C. § 2241 (the "Petition").

Magistrate Judge Frank Maas issued a Report and Recommendation dated December 29, 1999 (the "Recommendation") in this case. *See* 28 U.S.C. § 636(B)(1)(c); Local Civil Rule 72.1(d). Respondent has filed objections to the Report and Recommendation. 28 U.S.C. § 636(B)(1)(C) requires the Court to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a de novo review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); *see also* Local Civil Rule 72.1(d).

The Court does not adopt the Recommendation because Magistrate Maas relied upon an outdated procedural record, through no fault on his part. Specifically, Magistrate Maas' chambers did not receive a letter from the Government dated December 17, 1999, in which it was noted that

the Board of Immigration Appeals ("BIA") had rejected Diaz' removal appeal as of October 7, 1999 and the INS District Director had refused Diaz' request to be released from detention during the pendency of the removal appeal as of December 16, 1999, prior to the issuance of the Recommendation.

## I.  BACKGROUND

Diaz is a thirty-nine year old citizen of the Dominican Republic.  He was admitted to the United States in June 1967 as a lawful permanent resident.  (Decl. of Meredith E. Kotler ("Kotler Decl.") Ex. A at 1m, Ex. B at 59).  He has a lengthy criminal history which includes a felony conviction in December 1980 for robbery in the second degree, eight misdemeanor convictions over the course of seventeen years, and, most recently, a May 22, 1997 conviction upon a plea of guilty on May 5, 1997 to burglary in the third degree, for which he was sentenced to one to three years' imprisonment.  (*Id.* Ex. A at 1–10, Ex. B. at 56–57).  At least five bench warrants related to these charges have been issued against Diaz. (*Id.*).

It appears that Diaz' criminal problems are attributable, at least: in part, to his sporadic use of crack cocaine since 1985. (*Id.* Ex. C at 20).  Although he has spent much of the past ten years living in shelters and on the street, he has substantial ties to this country, including a mother, two sisters, a daughter, and a stepfather who are United States citizens.  (*Id.* at 19; Petition ¶ 10.)

The INS commenced removal proceedings against Diaz on July 28, 1997, through a Notice to Appear which charged that he was subject to removal because the May 1997 burglary conviction constituted an aggravated felony, pursuant to the Illegal Immigration Reform and Immigrant Responsibility of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (hereinafter "IIRIRA") (as an alien convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii)).  (*Id.* Ex. B at 71–73).  Ultimately, on February 12, 1998, after Diaz conceded his deportability, an Immigration Judge (hereafter "IJ") found that he was ineligible for cancellation of removal and ordered him removed to the Dominican Republic.  (*Id.* at 24–26).  On February 19, 1998, Diaz timely appealed the IJ's removal order to the BIA. (*Id.* at 15–16).  On October 7, 1999, the BIA affirmed the IJ's order of removal.  (Kotler December 17, 1999 Letter (the "December 17 Letter") at 1).

In May 1998, following the completion of his criminal sentence on the burglary charge, Diaz was turned over to the custody of the INS. (*See* Resp.'s Mem. Opp'n at 7).  After the transfer of custody, the District Director of the INS set Diaz' bail pending removal in the amount of $25,000 bond, and Diaz requested a redetermination of that decision by an IJ. (*Id.* Ex. C at 51).  Following several adjournments so that Diaz could secure legal representation, the bond hearing was completed on June 9, 1998.  Although the District Director's counsel urged that Diaz be held in lieu of a bond, the IJ upheld the District Director's original determination, which he termed "very reasonable bail." (*Id.* at 17–24).

In July 1998, Diaz appealed the IJ's custody redetermination to the BIA. (*Id.* at 12–14).  On April 12, 1999, the BIA vacated the IJ's bond order as moot and dismissed the appeal, holding that Mr, Diaz "may not be released from custody during the pendency of [his] removal proceedings." (*Id.* at 3).  The BIA decision turned on its interpretation of IIRIRA, and certain regulations promulgated pursuant thereto.  Subsequently, however, the INS Commissioner issued two memoranda reinterpreting the Act and accompanying

regulations which overrule, by implication, the BIA bail determination. (*Id.* Exs. E, F). Because Diaz is no longer subject to the INA's mandatory detention provision, 8 U.S.C. § 1226(c) (Supp. II 1996), the INS District Director considered Diaz' suitability for release from INS custody and determined on December 16, 1999 that he should remain detained. (Govt. Letter to the Court, dated Dec. 17, 1999 at Ex. B.) Diaz had the right to appeal within ten days of the date of the District Director's decision and to date, apparently has not filed such an appeal with the BIA. (Decl. of Wanda Sue Gearheart ¶ 5.)

Diaz again requested release in February 2000, but was denied by the INS District Director on November 1, 2000, again with the admonition that he had ten days in which to file an appeal to the BIA. (Govt Letter to the Court, dated November 3, 2000, at Ex. C, D).

Construed broadly, Diaz' petition encompasses three motions. First, Diaz challenges his removal order on the ground that he should have been permitted to seek a discretionary waiver of deportation, pursuant to former section 212(c) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1182(c) (1994) (hereafter the "INA"). Diaz argues that the bar to such a waiver under the Antiterrorism and Effective Death Penalty Act of 1996 (hereafter "AEDPA"), Pub.L. No. 104–208, Div. C, Title III–A, § 304(b), 110 Stat. 1214, 1277 (Apr. 24, 1996), was impermissibly applied to him retroactively.

Second, in a letter dated January 10, 2000, Diaz made a motion for custody redetermination pursuant to 8 C.F.R. § 236(a)(1) that appears to have been served on "the pro se office of Magistrate Judge Frank A. Maas" and the Government.

Finally, Diaz has filed a post-petition "Motion for Release on Health Related Basis" dated June 4, 1999, which requests that he be released on a bond due to his chronic epilepsy.

## II. DISCUSSION

### A. The Removal Order

██ Because the BIA affirmed the removal order on October 7, 1999, Diaz has exhausted his administrative remedies and the petition is properly before the Court. *See, e.g., Herrera–Mesa v. McElroy,* No. 98 Civ. 5376(DC), 2000 WL 109052 *3 (S.D.N.Y. Jan. 28, 2000) (holding that habeas corpus petitions are premature until administrative remedies have been exhausted). Moreover, pursuant to the Second Circuit's recent decision in *Calcano– Martinez v. INS,* 232 F.3d 328 (2d Cir. 2000), *cert. granted* —— U.S. ——, 121 S.Ct. 849, 148 L.Ed.2d 733 (2001), this Court retains jurisdiction under IIRIRA's permanent rules to review the purely legal claims of a criminal alien against final orders of removal, under 28 U.S.C. § 2241.

The former INA § 212(c) allowed for a discretionary waiver by the Attorney General of deportation for convicted aliens who could prove that they have lived in the United States continuously for at least 7 years, and have not been convicted of one or more "aggravated felonies." See INA § 212(c); 8 U.S.C. § 1182(c) (1994). On April 24, 1996, Congress amended the INA through AEDPA, and specifically, expanded the kinds of criminal convictions that would bar an alien from seeking § 212(c) relief. *See* AEDPA, § 440(d), 110 Stat. at 1277. Similarly, the permanent rules of IIRIRA repealed INA § 212(c) relief in its entirety for aliens who have been convicted of any aggravated felony, as that term is broadly defined by IIRIRA. *See* IIRIRA § 304(a); 8 U.S.C. § 1229b (1999).

■ The pivotal issue in this case, then, is whether Diaz is able to challenge the application of AEDPA § 440(d) or IIRIRA 304 to him as impermissibly retroactive. If he cannot and either statute applies to this case, Diaz is removable because he pled guilty to a deportable offense and is statutorily ineligible to apply to the BIA for discretionary relief from deportation.

The case cited by Petitioner in support of his argument, *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998), stands for the principle that a Petitioner may challenge the retroactive application of AEDPA § 440(d) if immigration proceedings were commenced before AEDPA took effect in April, 1996. Most recently, the Second Circuit has held that even where INS proceedings commenced after the enactment of AEDPA and IIRIRA, a Petitioner may still challenge their retroactive application if the Petitioner pled guilty or nolo contendere prior to the relevant enactment dates. *See St. Cyr v. INS*, 229 F.3d 406 (2d Cir.2000), *cert. granted*, — U.S. —, 121 S.Ct. 848, 148 L.Ed.2d 733 (2001) (finding that the controlling date for ascertaining whether the AEDPA and IIRIRA bars to discretionary relief apply is the date of the guilty plea); *see also* IIRIRA § 309(c)(1), 110 Stat. at 3009–625 (most of IIRIRA amendments to the INA do not apply to aliens placed in deportation proceedings prior to April 1, 1997).

In the instant case, Diaz pled guilty on May 5, 1997, after the enactment of both AEDPA in April 1996 and IIRIRA's permanent rules in April 1997. Consequently, the application of the bars eliminating discretionary relief to Diaz cannot be deemed impermissibly retroactive and their operation divests this Court of authority to consider any claims for relief under former INA § 212(c).

**B. Detention in INS Custody**

■ Diaz challenges his detention in INS custody while the INS attempts to effect his removal. By decision dated December 16, 1999, the INS District Director considered Diaz' suitability for release and determined that he should remain detained. (December 17 Letter Ex. B.) The decision specifically stated that Diaz could make an "appeal ... to the Board of Immigration Appeals ("BIA") within 10 days." (*Id.*) *See also* 8 C.F.R. § 236.1(d)(3)(iii) (1999). Diaz did not appeal to the BIA. (Decl. of Wanda Sue Gearheart ¶ 5.)

A subsequent decision denying Diaz' request for release dated. November 1, 2000 also specifically advised Diaz of his right to appeal to the BIA within 10 days. (November 3, 2000 Letter, Ex.D.) To date, Diaz has not filed any such appeal. The Government argues that Diaz' challenge to his detention in INS custody should be dismissed without prejudice for failure to exhaust administrative remedies.

It has long been established that an applicant for a writ of habeas corpus must first exhaust his administrative remedies. *Gonzalez v. Perrill*, 919 F.2d 1, 1–2 (2d Cir.1990); *Giwah v. McElroy*, No. 97 Civ. 2524(RWS), 1997 WL 782078, at **3–4 (S.D.N.Y. Dec. 19, 1997) (dismissing habeas petition where petitioner failed to appeal custody determination to the BIA). Here, Diaz has failed to seek BIA review of the INS decision. It appears that until Diaz decides to appeal a District Director decision to the BIA, as he was advised of his right to do, a District Director denial of bail will never be ripe for review by a district court. He will apparently get another chance should bail be again denied, in May of 2001. (November 3, 2000 Letter, Ex.D at 7.) Accordingly, Diaz' challenge to his detention in INS custody is **DISMISSED WITHOUT PREJUDICE**

for failure to exhaust administrative remedies.

C. Motion for Health-related Release

 Diaz has also filed a post-petition "Motion for Release on Health Related Basis" dated June 4, 1999, which requests that he be released on a bond so that he may be hospitalized and rehabilitated due to his alleged chronic epilepsy. The Government argues that Diaz' health does not require release from INS custody because he is receiving adequate medical care.

The relevant medical records indicate that Diaz has had a seizure disorder since childhood. (Declaration of Carolyn Chipman ("Chipman Decl.") ¶ 4.) Although Diaz' condition is chronic and is not curable, it can be treated with medication. (*Id.*) Diaz' prescription medication is dispensed to him on a daily basis by the medical unit. (*Id.* ¶ 5.) Indeed, if Diaz forgets to retrieve his medication, the medical unit reminds him to do so. (*Id.*) In addition, Diaz' blood is tested on a monthly basis to determine whether his medication dosage is sufficient; at the time of his motion, Diaz' blood was within normal limits. (*Id.* ¶ 6.) Finally, there is no indication that Diaz' condition is deteriorating, nor has he experienced any seizures during his detainment at York County Prison. (*Id.* ¶ 7.) Accordingly, Diaz' motion for health-related release is DENIED.

### III. CONCLUSION

For the foregoing reasons, Petitioner's challenge to his removal order is DENIED. His motion for health-related release is also DENIED. Diaz' petition is dismissed without prejudice to its renewal only insofar as he is seeking to challenge his detention pending removal and has timely exhausted his administrative remedies.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will not issue. 28 U.S.C. § 2253. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.