Juan C. RESTREPO, Petitioner,

v.

Brian FISCHER, Superintendent, Respondent.

No. 00 Civ. 6678(NRB).

United States District Court, S.D. New York.

March 30, 2001.

Juan C. Restrepo, Ossining, NY, pro se.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Petitioner Juan C. Restrepo ("petitioner" or "Restrepo"), currently incarcerated at Sing Sing Correctional Facility, has brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a trial by jury in Supreme Court, Bronx County (Massaro, J.), of two counts of kidnaping in the First Degree (New York Penal Law § 135.25[1] and [2][c] ), for which he was sentenced to concurrent indeterminate terms of imprisonment of from fifteen years to life.

Following his conviction and sentencing, petitioner appealed his conviction, through assigned counsel, to the New York State Supreme Court, Appellate Division, First Department. Assigned counsel raised two claims: (1) that his guilt was not established beyond a reasonable doubt; and (2) the trial court should have questioned a juror who exhibited favoritism toward the prosecution. In a *pro se* supplemental brief petitioner contended that his pretrial suppression motion was improperly denied as the pretrial identification was unduly suggestive and that he was denied his due process right to be present at a conference during trial.

On April 18, 2000, the Appellate Division unanimously affirmed petitioner's conviction. The Appellate Division held:

Defendant's suppression motion was properly denied. The identification of defendant was spontaneous and not tainted by any unduly suggestive police action.

Defendant's remaining claims are indistinguishable from claims raised and rejected on the codefendant's appeal (*People v. Camposano*, 269 A.D.2d 168, 704 N.Y.S.2d 13), and we reach the same conclusions herein.

*People v. Restrepo*, 271 A.D.2d 316, 706 N.Y.S.2d 636 (1st Dep't 2000). In relevant part, the Appellate Division in *People v. Camposano*, 269 A.D.2d 168, 704 N.Y.S.2d 13 (1st Dep't), *leave to appeal denied.*, 95 N.Y.2d 864, 715 N.Y.S.2d 218, 738 N.E.2d 366 (2000), held: "Defendant was not entitled to be present at a robing room conference concerning a matter of law, since defendant would have had no meaningful input. (*People v. Velasco*, 77 N.Y.2d 469, 568 N.Y.S.2d 721, 570 N.E.2d 1070)." Petitioner sought leave to appeal to the New York State Court of Appeals, but his petition was denied on July 7, 2000. *See People v. Restrepo*, 95 N.Y.2d 856, 714 N.Y.S.2d 8, 736 N.E.2d 869 (2000). Petitioner filed this habeas corpus petition on July 27, 2000 reiterating the two claims he presented in his *pro se* supplemental brief to the Appellate Division.

### DISCUSSION

### I. Standard of Review

■ In passing the Antiterrorism and Effective Death Penalty Act (AEDPA), P.L. No. 104–32, 110 Stat. 1214 (1996) (codified at scattered sections of 8 and 28 U.S.C.), Congress sought to "place[ ] a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." *Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'Connor, J.). Most significantly, 28 U.S.C. § 2254(d)(1), as amended, provides that a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits by a state court only if that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § d(1)—(2).

In *Williams*, the Supreme Court offered its initial guidance on the reach of the first of these critical provisions. The Court held that a decision "contrary to" Supreme Court precedent is either a decision in which a state court "arrives at a conclusion opposite to that reached by this Court on a question of law," *id.* at 405, 120 S.Ct. 1495, or one in which, on "facts that are materially indistinguishable from a relevant Supreme Court precedent," the court "arrives at a result opposite to ours." *Id.* The Court then held that the "unreasonable application inquiry", the second part of § 2254(d)(1), "should ask whether the state court's application of clearly established federal law was *objectively* unreasonable." *Id.* at 409, 120 S.Ct. 1495. (emphasis added). An unreasonable decision, the Court held, was something different from an "incorrect application of federal law," *id.* at 410, 120 S.Ct. 1495, although the Court did not clarify the nature of this difficult distinction. We now turn to petitioner's claims.

### II. Pretrial Identification

■ As noted earlier, petitioner's first claim is that the state court improperly denied his motion to suppress an out of

court identification on the ground that a police arranged show-up was highly suggestive and without an independent basis for identification. Our discussion begins with the full quotation of the suppression court's (Globerman, J.) decision following a hearing:

The defendant, charged with kidnapping in the first degree and related crimes, moves to suppress identification testimony on the ground that it was procured by means of an unlawfully suggestive police arranged confrontation with the identifying witness.

At a hearing on the motion, each side called one witness. A retired police detective, Stephen Fitzpatrick, testified for the People, and Gloria Restreppo, the defendant's mother, testified on behalf of the defense. I find that each witness testified credibly, and based upon their testimony I make the following findings of fact.

On July 29, 1994, then Detective Fitzpatrick was assigned to the investigation of an alleged kidnapping of the complainant herein, Maximo David Lopez. An automobile used in the kidnapping had been found at 53–40 82nd Street, Queens, and the police had learned that another auto, owned by one Ivan Bravo, was also registered from that location. On July 29th, in response to directions from his superiors, Detective Fitzpatrick went to 53–40 to surveil the premises in the hope that a perpetrator of the kidnapping could be found. He arrived at 53–40 between 5:30 and 6:00 PM and saw one of the known automobiles parked outside.

Sometime thereafter, other police officers visited 53–40 and spoke with the defendant's mother, Gloria Restreppo, who lived there. The officers, in an apparent ruse intended to bring the owner of the vehicles to the premises for inves-

tigation, told Ms. Restreppo that her son had a "problem" because he had been in a "big" accident with one of the automobiles. Since at that time no name for a suspect was known, the police did not use any name when they mentioned the son. After the police were refused permission to search the house because they did not have a warrant, Ms. Restreppo was asked if she could call her son, and she agreed to do so.

Ms Restreppo had three sons, all of whom resided with her. (Ivan Bravo was identified by Ms. Restreppo as her daughter's boyfriend who, she said, did not live in her house.) Of her three sons, Ms. Restreppo chose to call the defendant because he was the one "in charge of the house." After she had made contact with him, the police spoke to the defendant and asked him to come to the house to deal with the accident. He apparently agreed to do so.

Some time in the late afternoon or early evening, Mr. Lopez, the victim of the kidnapping, was brought to the area of 53–40, apparently in the hope that he might be able to identify as a perpetrator of the crime someone who entered or left that location. Mr. Lopez was told only that he was present to assist the police in looking for people involved in the kidnaping. With Detective Fitzpatrick, Mr. Lopez occupied a car across the street from that house. At this time, the police had no photograph of the person being sought and the only description for that individual was that of an Hispanic man with dark brown hair that was "kind of long." The site of the surveillance was an ordinary residential street and a number of pedestrians and automobiles were passing through the area. One half-hour after Mr. Lopez was brought to the scene, a car service cab in which the defendant was a passenger stopped near 53–40.

When the defendant got out of the cab, Mr. Lopez, who was seated in the rear of the surveillance automobile, said, "That's the person driving the car. That's the guy who helped kidnap me." Detective Fitzpatrick then left his automobile, hand signalled to plain clothes officers in the area to arrest the defendant, and the defendant was taken into custody.

The circumstances under which the defendant was identified cannot be construed as unduly suggestive or capable of leading to an irreparably mistaken misidentification. It is clear that the police did not even have an identified suspect when the defendant was, himself, brought to the scene by chance since his mother, in response to the police request, could have chosen one of her other two sons. The police effort was directed only at placing Mr. Lopez in a position where he might see *someone* whom he could tie to the crime. The defense has failed to make any showing that when the defendant left the cab it was known by anyone he was a son of Ms. Restreppo who had been summoned to the scene. Nor is there any evidence to suggest that Mr. Lopez was directed to pay any special attention to the defendant before Mr. Lopez identified him. The defendant was not placed in any circumstance different from those of the other people passing before Mr. Lopez during the one-half hour before the identification was made. Accordingly, the motion to suppress identification testimony is denied.

*People v. Restrepo,* Ind. No. 5901/94 (N.Y. Sup.Ct. filed July 24, 1996). Moreover, the Appellate Division affirmed the denial of the suppression motion stating that "[t]he identification of defendant was spontaneous and not tainted by any unduly suggestive police action." 271 A.D.2d 316, 706 N.Y.S.2d 636.

We find that the state court's resolution of the identification issue was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State proceeding. 28 U.S.C. § 2254(d). Clearly, even though the State courts did not cite case authority, they were applying the Supreme Court's teaching in *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which requires that a court determine whether the pretrial identification was "unnecessarily suggestive" in light of the "totality of the circumstances." [1]

### III. *Presence at a Critical Stage*

We now turn to petitioner's second claim, namely, that his absence from a robing room conference about whether the prosecution could correct erroneous testimony by one of its witnesses (or, pejoratively impeach its own witness). A "defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge ... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–106, 108,

---

1. Having found that the identification procedures were not "unnecessarily suggestive," the State court appropriately did not proceed to a reliability analysis under *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

54 S.Ct. 330, 78 L.Ed. 674 (1934)). However, due process does not require the defendant to be present "when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106–107, 54 S.Ct. 330.

Once again, it is clear that the New York State courts appropriately followed the law as set out in Supreme Court precedent. We certainly cannot conclude that the absence of the defendant, with the consent of his counsel, at a robing room conference concerning a legal issue, that was in any event clearly within the trial court's discretion, was violative of petitioner's constitutional rights.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss this petition for habeas corpus is granted. As petitioner has not made a substantial showing of the denial of a Constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. *See also United States v. Perez*, 129 F.3d 255 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011 (2d Cir.1997), *rev'd in part*, 129 F.3d 255 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order wound not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444–5, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**IT IS SO ORDERED.**